**Affirmed and Opinion filed December 1, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00681-CR

### JACOB BRENT SMITH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1410410**

## O P I N I O N

Today, we decide, among other things, whether a driver who led officers on a freeway chase and jumped out of a moving car is entitled to a jury instruction on the lesser included offense of evading arrest or detention on foot as opposed to the greater offense of doing so in a vehicle.[1] In four issues, appellant Jacob Brent

---

[1] Committing the offense on foot generally is a misdemeanor. Tex. Pen. Code § 38.04(b). Committing the offense while using a vehicle is a third degree felony. *Id*.

Smith challenges (1) the sufficiency of the evidence in support of his conviction for felony evading arrest or detention in a vehicle, (2) the trial court's refusal to submit jury instructions on two lesser included offenses, and (3) the trial court's overruling his objection to the prosecutor's comment during closing argument. We affirm.

## *Background*

Two officers on patrol received a radio dispatch report that a vehicle matching the description of a stolen car was traveling southbound on Interstate 45 in Houston, Texas. The officers parked on the shoulder of the freeway in their marked patrol car and waited for the car to pass them. A car matching the description in the dispatch, including the license plate number, passed the patrol car. The officers began following the car. Two more officers in a second patrol car joined the pursuit behind the first patrol car. Once both patrol cars were behind the stolen car, the officers activated the sirens and lights on their patrol cars.[2]

The driver of the stolen car was in the far left lane when officers started pursuing him, and he "cut across four lanes of traffic and got over to the right side shoulder." A passenger in the stolen car then threw what was later identified as a "meth pipe" out of the passenger side window, and the driver continued southbound on I-45. The driver then exited onto Highway 59 northbound. At that point, the officer driving the first patrol car pulled up next to the stolen car, and the officer on the passenger side saw the driver, later identified as appellant. The officer in the passenger seat testified that appellant also saw him.[3] Appellant then

---

[2] Officers testified that because they were initiating a felony stop involving a possible stolen vehicle, they were required to have two patrol cars present before activating emergency equipment to ensure backup.

[3] The officer testified, "He looked over to his left, made eye contact, . . . made a hand gesture; whatever that meant, I have no clue. But he just kind of acknowledged my presence and

moved into the emergency lane to get ahead of the patrol car, cutting off several cars in the process.

Appellant eventually exited onto Interstate 10 traveling eastbound, moved into the far left lane, slowed down to approximately five to ten miles per hour, and jumped out of the window of the moving vehicle.[4] He subsequently jumped over the median and ran across the westbound lanes of I-10 in front of oncoming traffic. Officers pursued appellant across traffic on foot. Appellant subsequently slid down an embankment where he injured his ankle and surrendered because he could no longer run.

Officers testified that the car chase lasted four to five minutes over four to five miles, and appellant was traveling approximately the speed limit of 60 miles-per-hour. Appellant's driving was "very erratic, unsafe for other motorists, [and] unsafe for [the officers]." In heavy traffic, appellant swerved through traffic, made fluctuations in his speed and rapid lane changes without signaling, and drove onto the shoulder several times. He cut off nearby drivers and caused them to slam on their brakes. One officer testified that appellant "was trying to get away from us, he . . . tried slowing down to throw us off, [and] he would get real slow and at the last second, dart over."

The jury found appellant guilty of the third degree felony of evading arrest or detention with a vehicle. Appellant pleaded true to two prior felony convictions. The trial judge enhanced the punishment based on those convictions and assessed punishment at 30 years' confinement.

---

then just continued to go straight."

[4] The passenger then took over driving but pulled over and was arrested by the officers in the second patrol car.

***Discussion***

Appellant challenges the legal sufficiency of the evidence to support his conviction and the trial court's denial of his requests for lesser included offense jury instructions on evading arrest or detention on foot and attempted evading arrest or detention in a vehicle. Appellant also complains that the trial court overruled his objection to the prosecutor's statement in closing argument that appellant could have subpoenaed officers or talked to them before trial to ascertain their anticipated testimony at trial.

## I.     Legal Sufficiency

In his first issue, appellant challenges the sufficiency of the evidence supporting a finding that he intended to flee from officers or that officers lawfully attempted to arrest or detain him. When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

4

A person commits third degree felony evading arrest or detention if, while using a vehicle, "he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." Tex. Pen. Code § 38.04(a)-(b); *see also Ex parte Carner*, 364 S.W.3d 896, 899 n.5 (Tex. Crim. App. 2012). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Pen. Code § 6.03.

**Evidence of Intentional Flight**. A person commits a crime under Section 38.04 if he knows a police officer is attempting to arrest or detain him but nevertheless refuses to yield to a police show of authority. *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet ref d). "'[F]leeing' is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). Intent may be inferred from conduct. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992); *see also Muhammed v. State*, 331 S.W.3d 187, 193 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Appellant was driving in the left lane. Two police cars pulled in behind him, and the drivers activated their emergency lights and sirens. Appellant immediately cut across four lanes of traffic and drove onto the shoulder. The passenger threw out a meth pipe, and appellant kept driving. *See Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana 2010, pet. ref'd) (concluding reasonable person could conclude defendant was fleeing while he considered what to do with contraband when he discarded marijuana out of his car before stopping). Despite officers' pursuit with their emergency lights and sirens activated, appellant kept traveling for four to five minutes. *See Mayfield v. State*, 219 S.W.3d 538, 540-41 (Tex.

App.—Texarkana 2007, no pet.) (concluding factually sufficient evidence supported jury's verdict when officers followed defendant in marked police car with emergency lights flashing and siren sounding for an extended period of time). Moreover, appellant drove erratically and endangered other drivers and the officers in an apparent attempt to avoid apprehension, jumped out of a moving car to flee on foot across several lanes of oncoming traffic, and slid down an embankment before injuring his ankle and surrendering.

Appellant argues that, despite this evidence, the following evidence supports his argument that he did not intend to flee: there were no exits on the portion of the freeway where appellant was traveling and stopping on the freeway is dangerous, appellant was not speeding, appellant may not have seen the lights on the patrol cars or heard the sirens, the offense reports did not reflect appellant's erratic driving or evasive maneuvers, and officers gave inconsistent testimony regarding how long they were following appellant. These arguments are unpersuasive.

Officers testified that even though there were no available exits off the freeway, appellant had several opportunities to stop on the shoulder, failed to do so, and in fact, exited onto two other freeways before being apprehended. Also, the fact that appellant was not speeding is of no moment. While speed, distance, time, and behavior of driving while being pursued may be factors in considering whether the requisite intent existed, no particular speed, distance, time, or behavior is required if other evidence establishes intent. *See Horne*, 228 S.W.3d at 445-46 (holding slow driving over a short period of time could constitute evading detention or arrest); *see also Mayfield*, 219 S.W.3d at 541 (holding an offense under section 38.04 does not require proof of high-speed or effectual fleeing, just intentional fleeing and noting, "fleeing slowly is still fleeing").

One officer testified that appellant looked at him and made a hand signal that

6

indicated appellant saw the officer, and appellant also drove erratically by swerving through traffic, making fluctuations in his speed, changing lanes quickly, driving onto the shoulder several times, and cutting off other drivers and causing them to slam on their brakes. On this evidence, a reasonable factfinder could have concluded that appellant knew the officers were pursuing him and intended to flee.

Finally, the jury, as the judge of credibility, was entitled to resolve any inconsistencies in the evidence. *See Isassi*, 330 S.W.3d at 638; *see also Sanchez v. State*, No. 14-11-00684-CR, 2013 WL 1197878, at *3 (Tex. App.—Houston [14th Dist.] Mar. 26, 2013, no pet.) (mem. op.). Officers testified that they did not know why a description of appellant's evasive driving maneuvers was not included in the offense reports, but it was not necessary to include that information because it was not an element of the offense. The officers testified they nevertheless remembered the details of appellant's erratic driving. The jury reasonably could have believed that the officers remembered these details despite the lack of detail in the offense reports.[5]

As to how long officers followed appellant, one officer initially testified that they followed appellant for ten to fifteen minutes. He later clarified that

---

[5] Defense counsel thoroughly cross-examined the officers regarding why these details were left out of the reports. Thus, the jury was able to consider the lack of detail in the reports alongside the credibility of the officers. Defense counsel asked one officer regarding appellant's evasive driving, "Would you agree that that's an important piece of evidence on an evading arrest in a motor vehicle?" The officer responded, "No, I think the most important evidence is that we initiated our emergency equipment and he refused to stop." On redirect, State's counsel elicited testimony that the offense report indicated appellant "was cutting off cars." Moreover, the officer who testified that appellant made a hand gesture at him explained that he did not include that detail in the offense report as follows: "I don't believe that's an element of evading in a motor vehicle, so . . . I did not put that." With regard to omitting details of appellant's driving, that officer also stated, "I felt like it was not necessary [to include those details]. . . . I have never seen anybody drive erratic to that point that has not known that we were following them trying to conduct a motor vehicle stop and putting lives in danger." The jury reasonably could infer from this testimony that the officer remembered what happened even though it was not in the offense report.

approximately ten to fifteen minutes elapsed from the time he heard the radio dispatch report until appellant was taken into custody, but the officers only followed appellant for five to six minutes, which was consistent with the other officers' testimony that the chase lasted four to five minutes. The jury was entitled to resolve any inconsistencies in the officers' accounts over how long the encounter lasted. *See Sanchez*, 2013 WL 1197878, at *3.

**Evidence of Lawful Attempt to Arrest or Detain Appellant**. Appellant argues that the State did not establish the lawfulness of the officers' attempt to arrest or detain him. We disagree. Officers may lawfully stop a vehicle and conduct an investigative detention when the vehicle matches the description of a stolen vehicle in a radio dispatch report. *See, e.g., Mount v. State*, 217 S.W.3d 716, 727-29 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Reasonable suspicion authorizing such a stop and detention exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id*. at 727-28. Here, officers received a radio dispatch report of a potentially stolen car traveling southbound on I-45. After parking on the shoulder of I-45, officers spotted a car driven by appellant matching the description of the stolen car, including the license plate number. Accordingly, the State presented evidence of specific, articulable facts that would lead officers to believe that appellant was driving a stolen car. Thus, the officers were entitled to stop appellant and conduct an investigatory detention to determine whether he had stolen the car. *See id*.

For these reasons, we hold a rational factfinder could have found appellant intended to flee from a person appellant knew was a peace officer attempting to lawfully arrest or detain him. We overrule appellant's first issue.

## II. Lesser Included Offenses

In his second and third issues, appellant complains that the trial court erred in refusing to submit to the jury instructions on the lesser included offenses of evading arrest or detention on foot and attempted evading arrest or detention in a vehicle. To determine whether a lesser included offense instruction should have been given, we analyze whether the elements of the lesser included offense are included within the proof necessary to establish the elements of the charged offense and whether there is evidence in the record that could allow a jury to find the defendant guilty of only the lesser included offense. *See State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013). Under the second prong, the defendant is entitled to an instruction on the lesser included offense when some evidence in the record would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). Although anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser included offense instruction, the evidence must establish the lesser included offense as a valid, rational alternative to the charged offense. *Id*. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Rather, there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted. *Id*.

**No Evidence of Only Evading on Foot**. Appellant argues that there is some evidence that he was looking for a safe place to park the car and decided to evade on foot only after he stopped. We disagree. Appellant pulled into the left lane of a major freeway with moderate to heavy traffic, slowed down, and jumped out of the window of a moving car. He subsequently ran across several lanes of oncoming

9

traffic and slid down an embankment. These are not the actions of someone who decided to flee only after stopping a car—he did not even stop the car. Further, as discussed above, appellant's erratic driving and evasive maneuvers are not consistent with the idea that he was searching for a safe place to stop. Appellant does not identify any facts showing that he decided to flee only after he stopped driving. We conclude there is no evidence that would permit a rational jury to find that if appellant is guilty, he is guilty only of the lesser included offense.[6] *See Jimenez v. State*, 419 S.W.3d 706, 713 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding appellant failed to adduce facts from which elements of lesser included offense could be deduced). Accordingly, the trial court did not err in failing to submit a jury instruction for the offense of evading on foot.

**No Evidence of Attempted Evasion**. Appellant also argues he was entitled to a lesser included offense instruction on attempted evasion, apparently because he eventually surrendered when he injured his ankle and could no longer run.[7] *See* Tex. Pen. Code § 15.01(a) (defining criminal attempt) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."). Delayed compliance with an officer's direction to stop can be found to be an attempt to evade arrest or detention. *Horne*, 228 S.W.3d at 446. The evidence in this case, however, does not show that appellant merely delayed in

---

[6] We further note that abandoning one's vehicle during a police chase and continuing on foot is a continuation of evading in a vehicle. *See, e.g., Hobbs v. State*, 175 S.W.3d 777, 779 (Tex. Crim. App. 2005) ("Section 38.04(b)(1), which elevates the punishment level for the offense defined in Section 38.04(a) when a vehicle is used, requires only that a vehicle be used at some time during the commission of this offense.").

[7] Appellant might be arguing instead that his crime was a mere attempt because he eventually was caught. His brief is not clear on this point. However, being caught does not reduce the offense to an attempt because evading arrest or detention is a continuing offense from the beginning of pursuit until either apprehension or the police give up the pursuit. *See Hobbs*, 175 S.W.3d at 779-80.

complying with the officers' efforts to stop him. An officer testified that when appellant got to the bottom of the embankment "he hurt his ankle and couldn't run no [sic] more, so he staggered up to me and my partner [and we] took him into custody . . . ." Accordingly, appellant was forced by his injury to stop fleeing. We conclude on these facts that there is no evidence that would permit a rational jury to find that appellant merely delayed in complying with officers' efforts to stop him. *Cf. id*. (holding when appellant signaled officer to follow him to his mother's house because he did not want his car to be towed, appellant "was attempting to evade arrest, even if only for the few minutes it took for him to park his car in front of his mother's house").

We conclude the trial court did not err in refusing to submit lesser included offense instructions to the jury on evading on foot or attempted evading. We overrule appellant's second and third issues.

## III.   Jury Argument

In his fourth issue, appellant argues that the trial court abused its discretion in overruling his objection to the prosecutor's statement during closing argument as follows:

> Now, defense counsel brought up some issues with the police officers bringing up new evidence and new testimony yesterday. What he's forgetting to tell you, we, the State, we have subpoena power to subpoena witnesses and we do. That's why we're here. That's why we're brought here.
>
> He also has subpoena power. He also can talk to them before they come to trial.

Appellant's counsel objected to this statement on the basis that the prosecutor was "going clearly outside the record." The trial court overruled the objection on the basis that appellant's counsel invited the argument.

11

We review the trial court's ruling on an objection to jury argument for abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We analyze the closing argument in light of the entire record and not upon the argument's isolated occurrence. *DeLarue v. State*, 102 S.W.3d 388, 405 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Proper closing arguments (1) summarize the evidence; (2) make reasonable deductions from the evidence; (3) respond to arguments of opposing counsel; or (4) plead for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Id*. The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Id*.

Appellant asserts that the prosecutor's argument was improper because it injected facts outside the record.[8] We disagree. Under the invited argument rule, a defendant cannot complain of improper prosecutorial argument if he invited the argument. *Watts v. State*, 371 S.W.3d 448, 458 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Ripkowski v. State*, 61 S.W.3d 378, 393 (Tex. Crim. App. 2001)). If the defendant's counsel goes outside the record in his argument, the

---

[8] Appellant also argues that the prosecutor injected his personal opinion of guilt into the argument and the trial court improperly commented on the weight of the evidence in stating that appellant's counsel "[i]nvited argument." Appellant did not object on these grounds at trial and has not preserved these issues for review. *See Johnson v. State*, 233 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[F]or appellant to complain on appeal about erroneous jury argument, . . . appellant must show that he lodged an objection during trial and pressed that objection to an adverse ruling."). Appellant also complains that the trial court did not instruct the jury to disregard the statement. Because we conclude the trial court did not abuse its discretion in overruling the objection, the trial court did not need to instruct the jury to disregard the comment.

prosecutor is also permitted to go outside the record to respond as long as the response is within the scope of the invitation. *Id.*

The prosecutor responded to the repeated argument by defense counsel that he was "ambushed" and denied the opportunity to confront the officers and learn their anticipated testimony before trial. No such evidence is in the record, so defense counsel went outside the record when he made this argument. The prosecutor's response that defense counsel had the power to subpoena the officers and thus could have talked to them before trial to ascertain their anticipated testimony was within the scope of defense counsel's invitation.[9] Accordingly, the trial court did not abuse its discretion in overruling appellant's objection to the

---

[9] Defense counsel repeated this argument several times, as truncated below:

I think the police officers came down yesterday and said this isn't enough. . . . There is no evidence in this police report that he was evading.

And what happened? Miraculously, some 10 or 12 months later, when their memory's not nearly as good it was on the date of the offense, they remembered all the evidence that would put [appellant] in a position, if it were true, to be evading.

There was not one shred of evidence in the police report. We're entitled by the Constitution, [appellant] and I are entitled to confront his accusers and we did that but we didn't have all the evidence. We're supposed to have all the evidence that they intend to present at trial. We're supposed to have that in advance. That's what's called the rule of discovery. We're supposed to be able to prepare a defense that is directly related to the evidence that they're going to put on the witness stand.

Did I have that opportunity? No. . . .

I think you need to send a message to the police officers and tell them to quit cheating because that's what they did. They cheated us out of a fair trial. How? Withholding evidence until they could ambush us at trial with it. . . .

That's trial by ambush. The police officers, they got together yesterday and said we're not going to get there with this police report. And they changed it. They added to it. They amended. Denied me my right to confront his accusers with adequate preparation. . . .

[Appellant] didn't get the benefits of [our criminal justice system] because I did not get all the evidence prior to trial. I was ambushed and you know that.

13

prosecutor's comment. *See Longoria v. State*, 154 S.W.3d 747, 766 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding prosecutor's remark regarding why appellant's family members were brought before grand jury was "properly responsive" to defensive argument that the family members had been brought before the grand jury as an intimidation tactic).

We overrule appellant's fourth issue.

We affirm the judgment of the trial court.

/s/　　Martha Hill Jamison
　　　　Justice

Panel consists of Justices Jamison, McCally, and Wise.
Publish — TEX. R. APP. P. 47.2(b).