

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00130-CR

CRAIG RUDY REYNOLDS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 220th District Court
Bosque County, Texas
Trial Court No. CR 14998

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

Craig Rudy Reynolds was indicted for failing to comply with sex offender registration requirements in the 220th Judicial District Court for Bosque County, Texas.[1] After a trial by jury, Reynolds was found guilty, sentenced to eighty years' imprisonment, and fined $10,000.00.[2] On appeal, Reynolds argues that the trial court erred in denying his motion for new trial as a result of the State's allegedly improper argument. We affirm the trial court's judgment.

I.      **Factual and Procedural Background**

At trial, the State introduced three "pen packets" into evidence to prove that Reynolds was previously convicted of three prior felony offenses as alleged by the State in its notice of intent to seek an enhancement. The State's primary witness, Investigator Ron Moe of the Comanche County Sheriff's Office, testified about the pen packets, which were admitted as State's Exhibits 3, 4, and 5. According to Moe, pen packets typically contain a judgment of conviction with the defendant's thumbprint, together with a fingerprint card containing the defendant's fingerprints, thumbprints, and signature (ten-print fingerprint card). Moe testified that a defendant's thumbprints are placed on a judgment of conviction while the defendant is still residing in the Comanche County Jail and that the ten-print fingerprint cards are taken by the Texas Department of Criminal Justice (TDCJ) once the defendant is transferred to a TDCJ facility. Moe testified that

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Reynolds' range of punishment was enhanced due to multiple offenses.

2

the pen packets in Exhibits 3, 4, and 5 each contained a judgment of conviction and a TDCJ ten-print fingerprint card.

On the morning of trial, Moe took another ten-print fingerprint card from Reynolds which Reynolds signed. The State introduced this ten-print card as Exhibit 2 to use as a known sample for comparison to the pen packets in Exhibits 3, 4, and 5. By comparing the fingerprints in each of the pen packets to the known ten-print card introduced as Exhibit 2, Moe testified that he was able to verify that Reynolds was the same person who was convicted in each of the cases referenced in Exhibits 3, 4, and 5. According to Moe, Exhibit 3 established that Reynolds was convicted in Collin County, Texas, for the felony offense of sexual assault of a child; Exhibit 4 established that Reynolds was convicted in Denton County, Texas, for the felony offense of violation of sex offender registration requirements; and Exhibit 5 established that Reynolds was convicted in Denton County, Texas, for the felony offense of possession of a controlled substance.

On cross-examination, Moe acknowledged that the thumbprint on the judgment of conviction in Exhibit 3 was too smudged to make a valid comparison to Exhibit 2. Accordingly, Moe could not testify that that thumbprint belonged to Reynolds. However, Moe testified that he was able to determine that Reynolds' fingerprints were contained on Exhibit 3's TCDJ fingerprint card and that other identifying information contained in the pen packet, such as Reynolds' state identification number (SID), FBI number, and social security number, verified that Reynolds was the defendant whose conviction was memorialized in Exhibit 3. Yet, Moe also admitted that the signature contained on Exhibit 3's TCDJ fingerprint card was different from the signatures on the fingerprint cards in the other exhibits.

Accordingly, Reynolds' theory at trial was that the State had failed to prove beyond a reasonable doubt that he was the same person who was originally convicted of the offense of sexual assault of a child as memorialized in the Collin County judgment of conviction contained in Exhibit 3. By failing to prove that fact, Reynolds argued, the State failed to prove that he had a duty to register as a sex offender. Essentially, Reynolds' defense was that he was a victim of mistaken identity. During closing arguments, Reynolds' counsel argued,

> [B]ut let's be realistic, people make errors. The S.I.D. number is manmade, man created document or identifier. The F.B.I. number is a manmade identifier. There is nothing from the documents with the person in Collin County who signed these judgments that link this signature to my client. There's no person that said I went with him that day. They could have called anybody from Collin County. They could have called the prosecutor, she's still around, they could have called one of the defense attorneys. They wouldn't have had to testify to anything that was attorney-client privilege, they could have eyeballed the guy. They could have called the Judge from then. They could have called the court reporter and gotten a transcript. They could have called the Sheriff's Office up there and got the fingerprint card from the book[-]in sheets from there. Their job is to make it beyond a reasonable doubt for you period and they can't do that, because the guy who signed these is not the same guy who signed these.

Building upon this foundation of mistaken identity, Reynolds next argued that the jury in this case should also disregard the previous failure to register conviction memorialized in Exhibit 4:

> What's my other fear about this? One of these convictions is for failure to register, so if a guy wants to -- if one of you wanted to just sit back there and keep (unintelligible) because it sounds bad, you know, he's already been convicted of failure to register, really that jury figured it out, right? What did they not tell you? They haven't told you how many times he's been acquitted or that they dismissed failure to register cases or that other counties may have dismissed failure to register cases. They didn't tell you that information. . . .
>
> . . . . They didn't tell you about all of that. They didn't tell you about whether there exists any civil suits or any other actions taken by my client to ensure that he is

4

pursuing a remedy for this miscommunication, this false identification, this whatever (unintelligible). They didn't tell you about that.

Thus, Reynolds concluded, the failure to register conviction memorialized in Exhibit 4 was unreliable because the jury in that case was also mistaken about the identity of the defendant in the original Collin County conviction. Furthermore, Reynolds implied that other juries had acquitted him on that evidence, that other prosecutors had dismissed failure to register charges because they determined that he was not the defendant convicted in the Collin County case, and that he had pursued civil litigation to clear up the mistakes.

The State responded to this argument, stating, "Ms. Lannen has also suggested that the State, we are somehow trying to hide evidence. I believe she said not -- how many times he's been acquitted -- zero. How many civil suits -- . . . zero." Reynolds objected on the grounds that the State was discussing evidence not in the record, requested that it be stricken from the record, and requested that the jury be instructed to disregard the State's comments. The trial court sustained the objection, struck the State's comments, and instructed the jury to disregard them. The State then re-characterized its argument: "You are only to take into consideration evidence. What evidence do you have of prior acquittals? What evidence do you have of civil suits whereby this man was exonerated for failing to register for sexual assault? Zero. That's what you're supposed to take into consideration."

The parties completed closing arguments, and the jury was excused for deliberations. After the jury began deliberating, and outside of the jury's presence, Reynolds made an oral motion for new trial based upon the State's improper argument. The trial court denied the motion. Reynolds timely perfected his appeal.

5

## II.  Issues Presented

In his sole point of error, Reynolds argues that, because of the State's improper jury argument, the trial court erred in denying his motion for a new trial.  The State responds (1) that Reynolds failed to preserve any error on this point by failing to timely request a mistrial; (2) that, even if Reynolds' motion for new trial could be construed as a timely motion for mistrial, Reynolds waived error because he invited the State's argument; and (3) that, even if the arguments were not invited and error were preserved, the arguments were not harmful as a matter of law.  Because we find that Reynolds invited the State's argument, we do not address whether Reynolds preserved error[3] or whether the State's arguments were harmless as a matter of law.

---

[3]Three steps are necessary to preserve error regarding prosecutorial misconduct, improper argument, or other improper evidence or remarks placed before the jury:  a specific and timely objection, a request for an instruction to disregard if the objection is sustained, and if the instruction is given, a motion for mistrial.  *Valencia v. State*, 946 S.W.2d 81, 82 (Tex. Crim. App. 1997); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Yet, the Court of Criminal Appeals has also held that

> we should avoid splitting hairs when determining whether a claim has been procedurally defaulted. "All a party has to do to avoid forfeiture of a complaint on appeal is to let the trial judge know what he wants[ and] why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) (citing *Langston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  Here, Reynolds lodged his objection, which was sustained, and requested an instruction to disregard, which was given, but he moved for a new trial rather than a mistrial, and he waited until after the jury began deliberating to do so.  Reynolds cites no legal authority for the proposition that a motion for new trial may be construed as a motion for mistrial for the purpose of preserving error, and we are aware of none.

Yet, the relief obtained by both motions is the same: in both instances, the current trial stops and the parties start all over again with a new trial.  Also, even though the jury had already left the courtroom when Reynolds made the motion, the trial court was still "in a proper position to do something about it," namely, declare the original trial over and begin again.  Thus, it is arguable that Reynolds' request for a new trial sufficiently preserved the point for appeal in view of the liberal standard announced in *Langston*.  Nevertheless, because we find the State's argument was proper under the invited error doctrine, we do not address that issue; rather, in the interest of addressing the substance of Reynolds' point of error, we assume without deciding that error was preserved.

## III. Analysis

Under the invited error doctrine, "[i]f the defendant's counsel goes outside the record in [her] argument, the prosecutor is also permitted to go outside the record to respond so long as the response is within the scope of the invitation." *Smith v. State*, No. 14-14-00681-CR, 2015 WL 7739632, at *6 (Tex. App.—Houston [14th Dist.] Dec. 1, 2015, no pet.) (citing *Watts v. State*, 371 S.W.3d 448, 458 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). In *Smith*, defense counsel argued that "he was 'ambushed' and denied the opportunity to confront the officers and learn their anticipated testimony before trial." *Id*. The Court of Appeals held,

> No such evidence is in the record, so defense counsel went outside the record when he made this argument. The prosecutor's response that defense counsel had the power to subpoena the officers and thus could have talked to them before trial to ascertain their anticipated testimony was within the scope of the defense counsel's invitation.

*Id*. To support its conclusion in *Smith*, the Fourteenth Court of Appeals cited to *Longoria v. State*, where in applying the invited error doctrine the court had noted,

> During his close, defense counsel suggested that prosecutors had brought members of appellant's family before the grand jury to intimidate them because the prosecutors otherwise had no evidence against appellant. The objected-to remarks of the prosecutor were properly responsive to this defensive argument because they attempted to explain the real reason why family members were brought before the grand jury.

*Longoria v. State*, 154 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (footnote omitted). Accordingly, the court found that the State's arguments were proper in that case. *Id.*

In the present case, Reynolds clearly suggested that other juries had acquitted him on the same evidence presented in this case, that other prosecutors had dismissed failure to register

7

charges in cases similar to this, and that he had pursued civil litigation to clear up all the mistakes which arose from the original Collin County case. Reynolds further suggested that, in light of those facts, his previous failure to register conviction was unreliable and should be disregarded in considering whether he was guilty of failing to register in the present case. No evidence supporting any of these assertions is contained in the record.

Nevertheless, Reynolds argued at trial that he never made any factual assertions to the jury that went outside of the record; he claimed, instead, that he merely posed questions to the jury in an effort to establish reasonable doubt. While we might characterize Reynolds' closing argument a little differently, even if we agreed that Reynolds only posed questions to the jury, those questions were posed in such a way that they suggested only one answer: that Reynolds had been previously acquitted, that similar charges against him had been dismissed, and that he was pursuing civil litigation to remedy these wrongs. By posing these questions, which could not be answered through the evidence in this record, Reynolds invited the State to answer the questions, which is precisely what the State did.[4]

Reynolds invited the error, and the State did not exceed the scope of that invitation. Accordingly, the State's argument was not improper.

---

[4]The flaw in Reynolds' argument is that it assumes that other such cases exist so that the State's answer "zero" was incorrect. Yet, because Reynolds and the State were both arguing outside the record, there is no record to indicate whether such evidence exists. Therefore, Reynolds cannot show that the State's answer to his argument was incorrect.

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice

Date Submitted:     April 27, 2016
Date Decided:      May 13, 2016

Publish