

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00013-CR

———————————————

JESSIE MORENO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1624100R

---

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

A jury convicted Appellant Jessie Moreno of the unauthorized use of a motor vehicle and evading arrest or detention and found the deadly-weapon enhancement allegation true. The trial court subsequently sentenced Appellant to nine years' confinement on each count and ordered the sentences to run concurrently. *See* Tex. Penal Code Ann. §§ 12.35(c)(1); 31.07(a); 38.04(a), (b)(1)(B). Appellant brings two issues. He first contends that the admission of the 911-call recording violates his right of confrontation under the Sixth Amendment of the United States Constitution. In his second issue, he argues that the evidence is insufficient to support his convictions because Arlington Police Department (PD) Sergeant Jill Willis's identification of him was "highly suspect." We affirm.

## FACTUAL BACKGROUND

### *Historical Facts*

On the afternoon of May 29, 2019, the Arlington PD received a 911 call reporting that a man had broken into a white pickup truck at 3901 West Arkansas Lane. The caller described the man as bald, Hispanic, and wearing a black shirt and a blue bandana around his neck. During the conversation with the 911 operator, the caller saw the man start the pickup and begin to drive away. When the license plate was within the caller's view, he provided the 911 operator with the first half of the license plate number, reading "JJH."

Officers patrolling the area began searching for the described pickup and driver. About an hour after the call, Sergeant Willis, driving a marked police car, spotted a white pickup traveling northbound on Green Oaks Blvd. Although the pickup did not have a front license plate, Willis saw a Hispanic man wearing a black shirt driving it. She immediately made a U-turn, began following the pickup, and saw its license plate. At this point, she confirmed that its license plate began with "JJH."

Sergeant Willis then turned on her emergency lights and attempted to stop the pickup. However, its driver did not pull over but instead led Willis, Patrol Officer Julie Herlihy, and another officer on a high-speed chase that ended in a neighborhood in east Fort Worth. As the chase proceeded through the residential area, the driver jumped out of the pickup's passenger side and rolled into the street.[1] He then jumped a fence and began running through backyards as the chase proceeded on foot.

To capture him, officers set up a perimeter around the block so that he could not exit the area. A heavy rain began.

At one point during the search, Fort Worth PD officers temporarily detained a potential suspect and called Sergeant Willis to identify him. That man was white and wore a teal Dallas Mavericks t-shirt. When she saw him, Willis told the other officers that he was not the person she had seen driving the white pickup.

---

[1]The pickup eventually stopped after knocking down a fence.

After almost an hour of searching, officers found Appellant sitting on the front porch of a house located one street away from where Sergeant Willis had seen the driver exit the white pickup. When officers found Appellant, he was not wearing a shirt. He was soaking wet and breathing heavily and had fresh scratches on his chest and shoulders, resembling road rash. While detaining Appellant, officers located a black t-shirt lying on the porch and found a screwdriver in his front pocket. After Appellant was in custody and sitting in the back of a patrol car, Sergeant Willis arrived to determine if she could identify him as the driver of the stolen pickup. Before seeing him, she said, "It's got to be him." After seeing him, she exclaimed, "I think we have a winner. It's him." After Sergeant Willis identified Appellant, the police arrested him, and a grand jury later indicted him for unauthorized use of a motor vehicle and evading arrest or detention.

### Procedural and Elemental Facts

At the beginning of Appellant's trial, the State offered the 911 call but did not have the caller testify. Defense counsel objected to the admission of the 911 call in evidence as a violation of Appellant's rights under the Confrontation Clause of the Sixth Amendment and *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004). In response to the defense's objection, the State asserted that the caller's statements were not testimonial because they were made contemporaneously with the events and were made to help law enforcement address an ongoing emergency. The trial court overruled the objection and admitted the 911 call.

In addition to the 911 call, the State offered the testimony of several officers, the owner of the white pickup, and a neighbor who lived next door to the house where the police found Appellant. Sergeant Willis testified that she was "[o]ne hundred percent sure" that Appellant was the same man she had seen driving the pickup and running away from the officers on foot. The next-door neighbor testified that Appellant did not live in the house and that he had never seen Appellant before. Sergeant Willis and Officer Herlihy both testified that the pickup driven as Appellant drove it could have caused serious bodily injury or death if it had struck someone. Jonathan Hoang, the owner of the pickup, testified at trial that he had never given Appellant permission to drive it. Finally, Arlington PD Corporal Michael Dosser testified that the pickup was in fact a motor-propelled vehicle.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant insists that the evidence is insufficient regarding proof of his identity. To support this contention, he points to the fact that Sergeant Willis was the only witness who testified that she saw him driving the white pickup. Further, Appellant argues that because Sergeant Willis saw the driver of the white pickup for only "one second," her later identification of him as the driver was "highly suspect" and therefore insufficient to show his guilt beyond a reasonable doubt.

The State replies that Appellant's argument attacks Sergeant Willis's credibility and disputes the weight of her testimony, rather than disputing the sufficiency of the evidence admitted at trial. The State supports its contention by asserting that

5

evaluating the credibility of witnesses and the weight of their testimony is within the purview of the factfinder. We agree.

## Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend XIV.

In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence.").

## Substantive Law and Analysis

Appellant was charged with the unauthorized use of a motor vehicle and evading arrest or detention. Taking each charged crime individually, a person commits unauthorized use of a motor vehicle if he "intentionally or knowingly operates another's . . . motor-propelled vehicle without the effective consent of the owner." Tex. Penal Code Ann. § 31.07(a). At trial, the State presented evidence that Sergeant Willis saw Appellant driving the white pickup. The State also presented testimony from Hoang, the pickup's owner, that he had not given Appellant permission to drive it. Finally, the State provided testimony from Corporal Dosser that the pickup was a motor-propelled vehicle.

Turning to the evading charge, "a person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." *Id.* § 38.04(a). This offense is a felony if "the actor uses a vehicle . . . while the actor is in flight." *Id.* § 38.04(b)(1)(B). At trial, the State presented testimony that each of the officers participating in the chase was driving a marked police car. Further, Sergeant Willis testified:

- She first turned on her overhead lights and then her siren, signaling that she was attempting to pull over Appellant.

- He did not pull over and instead led the officers on a high-speed chase, reaching speeds of over 80 miles per hour.

- When the chase reached the residential area in east Fort Worth, he jumped out of the pickup and continued to flee from the officers on foot.

7

Based on these facts, a rational factfinder could deduce that Appellant intentionally fled in the pickup from officers who were attempting to detain him. *See Smith v. State*, 483 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that intent to evade police may be inferred by the defendant's conduct).

In addition to convicting Appellant of unauthorized use of a motor vehicle and evading arrest, the jury also found the deadly-weapon enhancement true. A defendant's sentence may be enhanced for certain offenses if a deadly weapon is "used or exhibited during the commission of the offense." Tex. Penal Code Ann. § 12.35(c)(1). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). In support of this enhancement, the State presented testimony from Sergeant Willis and Officer Herlihy that the pickup driven as Appellant drove it could have caused serious bodily injury or death if it had struck someone.

Appellant challenges only the State's proof of his identity as the driver of the white pickup. He does not challenge the evidence of any other elements of the two offenses, nor does he challenge the deadly-weapon finding. At trial, the State primarily relied on Sergeant Willis's identification of Appellant as the pickup's driver. Appellant's concerns regarding Sergeant Willis's identification of him attack the credibility of the identification rather than the sufficiency of the evidence presented at trial. *See Queeman*, 520 S.W.3d at 622. As explained above, credibility determinations are within the purview of the factfinder and this court may not reevaluate the weight

or credibility of evidence. *Id.* Additionally, the fact that Sergeant Willis was the only witness to directly testify to Appellant's identity is of no import, both because the testimony of a single eyewitness may be sufficient to support a jury's findings regarding identity, *Walker v. State*, 180 S.W.3d 829, 832 (Tex. App.— Houston [14th Dist.] 2005, no pet.); *see Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (holding that a jury may convict based off the testimony of a single eyewitness), and because circumstantial evidence supported the finding. *See Castilla v. State*, 374 S.W.3d 537, 540–41 (Tex. App.—San Antonio 2012, pet. ref'd). Such circumstantial evidence includes the dirty black t-shirt found near Appellant which matched that of the man who had rolled out of the pickup, Appellant's fresh injuries that were consistent with rolling onto the street, the fact that he was found an hour later and only one street away from where the driver had exited the pickup, the fact that Appellant was found soaking wet and out of breath, the fact that he was found on the porch of a house where he did not live, and the fact that the neighbors had never seen him before.

Based on the facts presented at trial, we conclude that any rational factfinder could have determined beyond a reasonable doubt that it was Appellant who had intentionally driven the pickup without the owner's consent and who had intentionally fled the police in it. Accordingly, we overrule Appellant's second issue.

## THE CONFRONTATION CLAUSE

In his first issue, Appellant contends that the trial court erroneously admitted the 911 call because the caller did not testify. Appellant argues that the statements

9

made by the caller were testimonial and therefore fell within the scope of the Confrontation Clause. As a result, Appellant argues that because he did not have a chance to develop the testimony through cross-examination, his rights guaranteed under the Confrontation Clause were violated. The State responds by asserting that the statements from the 911 call were nontestimonial because they were made as the actual events were happening and because the primary purpose of the call was to help resolve an ongoing emergency.

### Applicable Law

The Confrontation Clause of the Sixth Amendment, made applicable to the states via the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *Langham v. State*, 305 S.W.3d 568, 577 (Tex. Crim. App. 2010). Accordingly, out-of-court statements that are testimonial in nature are objectionable under the Confrontation Clause. *Langham*, 305 S.W.3d at 575–76. For testimonial statements to be admitted, the defense must have a chance to develop the testimony through meaningful cross-examination. *Crawford*, 541 U.S. at 53–54, 124 S. Ct. at 1365. Conversely, nontestimonial statements fall outside the scope of the Confrontation Clause. *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155 (2011).

Whether an out-of-court statement is testimonial or nontestimonial is a question of law that is reviewed de novo, while giving deference to the trial court's fact and credibility determinations. *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim.

10

App. 2006). The legal standard for determining if a statement is testimonial under *Crawford* is that of an objectively reasonable declarant in the position of the actual declarant. *See Crawford*, 541 U.S. at 52, 124 S. Ct. at 1364; *Wall*, 184 S.W.3d at 742–43.

A statement is testimonial when the circumstances objectively indicate that the primary purpose of the statement is to recount past events for potential future criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006). Conversely, when the primary purpose of a statement is to deal with an ongoing emergency, rather than create a record for trial, the statement is nontestimonial and beyond the scope of the Confrontation Clause. *Bryant*, 562 U.S. at 358, 131 S. Ct. at 1155. Statements made during 911 calls are typically considered nontestimonial because the caller recites events as they are happening and because the primary purpose of placing a 911 call is to alert law enforcement of an ongoing emergency. *Davis*, 547 U.S. at 827, 126 S. Ct. at 2276.

When a defendant objects to an offered statement under *Crawford*, the burden shifts to the State to establish that either (1) the statement is not testimonial or (2) the testimonial statement is still admissible under *Crawford. De La Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008).

## Analysis

Here, the State carried its burden to establish that the statements contained in the 911 call were nontestimonial. The statements made during the 911 call were nontestimonial because the caller was relating contemporaneous events to assist law

11

enforcement in addressing an ongoing emergency. *See Bryant*, 562 U.S. at 358, 131 S. Ct. at 1155. The caller described events as they happened, including his seeing the suspect who had broken into the pickup start it and drive away. Additionally, the caller informed the 911 operator of the direction that the driver was turning after leaving the parking lot so that law enforcement could quickly locate the described pickup.

Because the statements contained in the 911 call were nontestimonial and therefore not subject to the Confrontation Clause, the trial court did not err by admitting the exhibit. Accordingly, we overrule Appellant's first issue.[2]

## CONCLUSION

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 1, 2021

---

[2]Appellant asserts within the discussion of this issue that the 911 call is hearsay. He does not develop that line of argument or support it with any authority. To the extent he intended to argue the hearsay issue on appeal, we overrule it as forfeited. *See* Tex. R. App. P. 38.1(f), (i); *Linney v. State*, 413 S.W.3d 766, 767–68 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of pet.).

12