

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOSHUA DALE BITTER, | § | No. 08-22-00176-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Crane County, Texas |
| Appellee. | § | (TC# 1929) |

## MEMORANDUM OPINION

A jury convicted Appellant Joshua Dale Bitter of evading arrest or detention in a motor vehicle, enhanced for a prior conviction to which he pleaded "true," and assessed punishment of 7.5 years confinement, which the trial court imposed. *See* TEX. PENAL CODE ANN. § 38.04(a)(b)(2)(A). On appeal, Bitter brings a single issue asserting the evidence was legally insufficient to prove he fled intentionally. We affirm.

## I. BACKGROUND

A grand jury charged Joshua Dale Bitter by indictment alleging that, on or about June 2, 2020, Bitter, while using a vehicle, intentionally fled from a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain him. At trial, the State presented testimony from Gerardo Rodriguez, a Highway Patrol Trooper with the Texas Department of Public Safety. Also, the State presented, and the trial court admitted, a dash-cam video recording

from Rodriguez's patrol vehicle depicting the incident in question. Bitter also testified in his own defense. The evidence at trial established the following.

On June 2, 2020, Rodriguez was assigned to traffic enforcement, working stationary radar on highway FM 1053 in Crane County. Rodriguez described the area as a two-lane highway, more of a back road, with little traffic. Rodriguez remained stopped on the side of the road checking motorist's speeds and anything else that caught his attention. Rodriguez noticed a red Chevy Camaro approaching his position with an improperly placed license plate. Rodriguez then turned around and turned on his emergency lights to initiate a traffic stop. He explained that he typically turned on his lights early so the other driver could see them and find a safe spot to pull over.

As Rodriguez followed the red Camaro, it turned into a dirt road to the right. Because Rodriguez believed the vehicle was stopping, he began slowing down. Soon, however, the vehicle U-turned then drove southbound on the highway in the opposite direction. Rodriguez moved over to the opposite lane, to prevent the vehicle from leaving. But it then drove on the shoulder of the road and continued at a high rate of speed. Rodriguez immediately turned around, turned on his siren, and pursued the vehicle. Rodriguez noticed there was only one occupant in the vehicle, a man with long hair in dreadlocks.

Rodriguez testified the driver drove at a high rate of speed. Even after Rodriguez reached a speed of about 110 miles per hour, he could not catch up to the other vehicle. He decided to slow down and ask for backup. It came to his mind that he remembered a subject that lived in the area. He then noticed dust still lingering in the air from a dirt road to a residence. Noting the dust, Rodriguez assumed the vehicle had turned onto the road. Rodriguez made a U-turn and pulled into the road which had a residence a short distance away. He then observed the male subject walking around. He instructed him to come towards him and show his hands. Rodriguez recognized Bitter from previous law enforcement encounters. From the dash cam recording, he can be heard calling

2

Bitter by name. Rodriguez also observed the red Camaro parked at the end of the driveway by the house.

Rodriguez yelled at Bitter to walk towards him with his hands up. Rodriguez testified he wanted Bitter to come towards him because he did not have backup yet. Bitter can be seen walking towards Rodriguez but repeatedly walks back towards the house. Rodriguez continues to yell at him to come towards him. Bitter can also be heard yelling back at Rodriguez but it is unclear what is said. Bitter finally arrives at a concrete culver close to Rodriguez and Rodriguez tells him to lay down on the concrete so he can detain him. Bitter tells him no and tells Rodriguez to come towards him. Bitter finally lays down on the concrete for about 30 seconds but then gets back up and walks towards the house. Once Rodriguez's backup arrived, he detained him in handcuffs. Because the pursuit had flowed into Pecos County, Rodriguez received backup from Constable King of Imperial.

Rodriguez further testified that Bitter stated he did not stop because he did not have "a good license." Bitter commented, "I almost got you, though." Rodriguez understood his comment as referencing his attempt to evade the stop. Rodriguez soon discovered that Bitter had a suspended license.

In the defense case in chief, Bitter testified he did not stop when he was supposed to because he was driving a vehicle not registered in his name. He described that he believed it would be easier to get out of jail than to get the car out of impound. Bitter testified he was not trying to get away from Rodriguez. Rather, he wanted to get the vehicle on private property to avoid having it towed. On cross examination, Bitter confirmed he understood the law and he knew he was supposed to stop when Rodriguez attempted to pull him over. Bitter confirmed he did not stop when he knew he was required to stop but made the conscious decision to keep going.

After deliberations, the jury found Bitter guilty of the charged offense. At the punishment phase, Bitter pleaded true to the enhancement paragraph, admitting he had been convicted in 2011 of a felony charge of burglary of a habitation with intent to commit assault. The jury assessed punishment at imprisonment in the Texas Department of Criminal Justice for a term of 7.5 years and a fine of $5,000. The trial court entered judgment in accordance with the jury's verdict. This appeal followed.

## II. DISCUSSION

In his sole issue, Bitter contends the evidence is legally insufficient to establish that Bitter was guilty of evading arrest as alleged in the indictment. Specifically, Bitter contends he denied having the intent to intentionally flee from Trooper Rodriguez. Rather, he merely intended to get his vehicle to his residence so it would not be impounded. After arriving at his residence, Bitter argues he walked to Rodriguez with his hands in the air. Thus, he argues the evidence is legally insufficient to establish his guilt as charged by the indictment.

### A. Standard of review and applicable law

In assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Rather, we defer to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id.* Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The elements of evading arrest or detention while using a motor vehicle are (1) intentionally fleeing; (2) from a person whom the defendant knows is a peace officer; (3) trying to lawfully arrest or detain him; and (4) using a motor vehicle while in flight. *See* TEX. PENAL CODE ANN. § 38.04(a). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03.

A person commits a crime under § 38.04 if he knows a police officer is attempting to arrest or detain him but nevertheless refuses to yield to a show of police authority. *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd). "[F]leeing is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). "Intent may be inferred from conduct." *Smith v. State*, 483 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Factors such as speed, distance, and duration of pursuit may be factors in considering whether a defendant intentionally fled, but no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent. *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.).

### B. Analysis

Bitter argues the evidence was insufficient because he testified that he did not initially stop when he should have because he believed it would be easier to get out of jail than to get the vehicle

out of impound, as it was not in his name. In essence, Bitter complains the evidence is legally insufficient to prove he intentionally fled from Rodriguez. Rather, he argues it established he merely wanted to get the vehicle home before he then surrendered.

A similar argument was presented and rejected by the Sixth Court of Appeals. *See Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). There, an officer pursued Brandon Horne after clocking him driving 45 miles per hour in a 35 mile-per-hour zone. *Id.* at 444. Horne did not stop when the officer turned on his overhead lights or his siren but stuck his arm out the window and motioned for the officer to follow him. *Id.* When the officer pulled up beside Horne and ordered him to pull over, appellant shook his head and continued to drive. *Id.* Even after the officer pulled his vehicle in front of Horne's vehicle to block his path, he circumvented the officer's car until he reached his destination of his mother's house. *Id.* at 445. Horne had not stopped because he had outstanding city warrants and wanted to get his vehicle to his mother's house so it would not be impounded. *Id.* Though the evidence indicated Horne had no intent to ultimately escape the officer, the reviewing court in *Horne* concluded it showed he was attempting to evade arrest, even if only for a few minutes. *Id.* at 446. Thus, *Horne* held the evidence was legally sufficient to support the jury's verdict convicting him of evading detention. *Id.*

Here, the evidence established that once Rodriguez initially activated the lights on his patrol vehicle, Bitter turned around and traveled in the opposite direction at a high rate of speed. Rodriguez attested he was going about 110 miles per hour and still could not catch up to Bitter's red Camaro. The evidence also showed Rodriguez pursued Bitter for approximately four minutes down the highway. Moreover, Bitter admitted he did not stop when he knew he was lawfully required to do so and consciously decided to keep driving to his residence. From this evidence, a reasonable fact finder could have concluded that Bitter knew Rodriguez was pursuing him and he

6

intended to flee. *See Horne*, 228 S.W.3d at 446 (describing that "fleeing" is anything less than prompt compliance).

Additionally, as the sole judge of the weight and credibility of witnesses, the jury was free to believe or disbelieve all or any part of Bitter's testimony. *See* TEX. CODE CRIM. PROC. ANN. § 38.04(a); *Isassi*, 330 S.W.3d at 638. Although the jury heard Bitter's testimony that he only intended to drop the vehicle off at his residence, the jury also viewed the video from the patrol vehicle's dashcam. The jury could have viewed Bitter's conduct of making a U-turn and driving at a high rate of speed, to the point he lost contact with Rodriguez, as evidence of intent to evade arrest or detention. Also, once Rodriguez located Bitter at his residence, the jury could have viewed his conduct of not complying with Rodriguez's requests to walk towards him and lay down on the culvert as evidence he intended to evade an arrest or detention. Lastly, the jury heard testimony from Rodriguez that once Bitter was detained in handcuffs, he commented, "I almost got you, though." From all of this evidence, the jury could have disbelieved Bitter's testimony and found beyond a reasonable doubt that he intentionally evaded detention with a vehicle as alleged by the indictment. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912.

Finding the evidence legally sufficient, we overrule Bitter's sole issue.

### III. CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

May 25, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

7