**Affirmed; and Affirmed as Modified and Opinion Filed July 22, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00414-CR
### No. 05-15-00415-CR

**EMAJIN TREVON JACKSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1458177-X and F-1458178-X**

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Lang

Emajin Trevon Jackson appeals the trial court's judgments convicting him of aggravated robbery while using or exhibiting a deadly weapon, and evading arrest or detention while using a motor vehicle while in flight. *See* TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (West 2011) (aggravated robbery); TEX. PENAL CODE ANN. § 38.04(a), (b)(2) (West Supp. 2015) (evading arrest or detention). In both cases, the jury found Jackson guilty and that he used or exhibited a deadly weapon. The trial court assessed his punishment at ten years of imprisonment in the aggravated robbery case and two years of imprisonment in the evading arrest or detention case.

Jackson raises five issues on appeal, arguing: (1) the evidence is insufficient to support his conviction for aggravated robbery; (2) he suffered egregious harm when the trial court included alternative theories of guilt in the jury charge that were not supported by the evidence;

(3) the trial court assumed an inappropriate role; (4) he received ineffective assistance of trial counsel; and (5) the evidence is insufficient to support his conviction for evading arrest or detention.

We conclude the evidence is sufficient to support Jackson's convictions. Also, we conclude the jury charge was not erroneous and Jackson has not shown that the trial court assumed an inappropriate role or his trial counsel was ineffective. Finally, we modify the judgment convicting Jackson of evading arrest or detention to reflect that the jury found that he used or exhibited a deadly weapon during the commission of the offense. The trial court's judgment convicting Jackson of aggravated robbery while using or exhibiting a deadly weapon is affirmed. The trial court's judgment convicting Jackson of evading arrest or detention while using a motor vehicle while in flight is affirmed as modified.

## I. FACTUAL AND PROCEDURAL CONTEXT

At approximately 1:00 a.m., after returning from Houston, Sheila Etonga was alone in her apartment complex parking lot. She was removing her suitcase and backpack from the trunk of her car when a young man, later determined to be Jackson, came toward her. Jackson asked to use her cell phone and Etonga said, "No." Jackson told Etonga that he had been locked out of the house and his girlfriend would not let him back in so he needed to call someone to pick him up. Etonga asked Jackson for the number he wanted to call, intending to place the call for him once she was in her apartment, but Jackson said that he did not have a number. Then, Jackson asked Etonga to "give him a ride," but Etonga refused. Jackson asked Etonga "why" and, at some point during their conversation, Etonga saw that Jackson's "eyes got a little scary" and that he was holding a knife toward her. Then, Jackson demanded Etonga's money or wallet.

Etonga told Jackson that she would give him what he wanted and pleaded with him not to hurt her. She got her wallet from her backpack and gave it to Jackson, continuing to beg him not

–2–

to hurt her. Jackson replied, "I won't hurt you." Next, Jackson demanded her keys, which Etonga gave him. As Jackson was getting into Etonga's car, he turned back and also demanded Etonga's cell phone and Etonga complied. Then, Jackson drove away in Etonga's car. Etonga waved down a different car that was just entering the apartment complex and asked the driver to call 9-1-1 because she had just been robbed.

Officer Rick McDaniel responded to the 9-1-1 call. Etonga was breathing heavy, crying, and "trembling real bad" and it took Officer McDaniel about two minutes to calm her. Etonga described the man as a black male around twenty years old with a "low haircut." Also, Etonga provided Officer McDaniel with a description of her car, including the license plate number, color, make, and model. This information was broadcast over the radio and within five minutes Officers Cody Witt and Alyssa Wadas observed a vehicle matching the description of Etonga's car driving on the road.

After confirming the license plate number and that the registered owner of the vehicle was Etonga, Officers Witt and Wadas followed the vehicle and called for additional officers. Then, the vehicle stopped, so Officers Witt and Wadas activated their emergency lights, signaling the vehicle to remain stopped. Officers Witt and Wadas got out of their vehicle, withdrew their service weapons, and instructed Jackson to put his hands outside the window and get out of the vehicle. Jackson attempted to get out through the driver-side door, but it would not open, so he leaned over to the passenger side. As he did so, the reverse lights came on and the vehicle backed into the police car. Then, Jackson put his hands out of the passenger side door. However, instead of getting out of the vehicle as instructed by the police, he suddenly jumped back into the driver's seat and drove away.

Jackson drove erratically from side-to-side, hitting multiple curbs and "disregarding traffic control devices such as stop signs." Eventually, the vehicle crashed. Jackson got out of

the car and began running on foot, carrying a wallet, which he threw to the ground. Jackson jumped over a fence and Officer Darrell Stevens pursued him, yelling "Dallas [P]olice. Stop." Eventually, Jackson was arrested and when the police searched him, they found a pocket knife with a three and one-half inch blade, and Etonga's cell phone in his pocket. The police also recovered Etonga's wallet. Detective Laura Robeson interviewed Jackson. During the interview, Jackson told Detective Robeson that he bought the car for $300 from someone she understood to be a random person he encountered.

Jackson was indicted for the offenses of aggravated robbery while using or exhibiting a deadly weapon, and evading arrest or detention while using a motor vehicle while in flight. Before trial, Jackson told the trial court that he did not want a jury trial. Defense counsel advised the trial court that his client had rejected two different plea bargain offers made by the State, was not communicating with him, and the State was not willing to waive its right to a jury trial. Jackson expressed frustration with his attorney because he wanted a plea bargain for community supervision or five years of imprisonment. The trial court explained the plea bargain process to Jackson and admonished that if Jackson had a trial, he could elect whether he wanted the jury or the trial court to assess his punishment. If the jury assessed his punishment, he would be eligible for community supervision, but if the trial court assessed his punishment, he was not. At the conclusion of the pretrial hearing, the trial court postponed the trial, so that defense counsel could further explain Jackson's options to him.

Before the commencement of the continued trial, Jackson's counsel advised the trial court that Jackson elected to have the trial court assess his punishment in both cases. Jackson confirmed that he was giving up his right to seek community supervision. A jury found Jackson guilty of both offenses and that he used or exhibited a deadly weapon in both offenses. The trial

court assessed Jackson's punishment at ten years of imprisonment in the aggravated robbery case and two years of imprisonment in the evading arrest or detention case.

## II.  SUFFICIENCY OF THE EVIDENCE

In issues one and five, Jackson argues the evidence is insufficient to support his convictions for: (1) aggravated robbery while using or exhibiting a deadly weapon; and (2) evading arrest or detention while using a motor vehicle while in flight.

### A.  Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).  Appellate courts are required to determine whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19.  An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.  *See Jackson*, 443 U.S. at 319, 326; *Merritt*, 368 S.W.3d at 525; *Brooks*, 323 S.W.3d at 899.  All evidence, whether properly or improperly admitted, will be considered when reviewing the sufficiency of the evidence.  *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Jackson*, 443 U.S. at 319.

### B.  Aggravated Robbery

In his first issue, Jackson argues the evidence is insufficient to support his conviction for aggravated robbery because the evidence was insufficient to establish that: (1) he intentionally or

knowingly placed Etonga in fear of imminent bodily injury or death; and (2) he used or exhibited a deadly weapon during the commission of a robbery.

### 1. Placed Another in Fear of Imminent Bodily Injury or Death

In the first part of issue one, Jackson argues the evidence was insufficient to establish that he intentionally or knowingly placed Etonga in fear of imminent bodily injury or death. Jackson contends that "this case proceed[ed] on the idea that a person can commit robbery by placing another in fear of imminent bodily injury" and that Etonga's subjective fear was not enough. Also, he argues that he "did not commit an act that [in] common experience is expected to cause a complaining witness to fear death or *imminent* bodily injury." (Emphasis in orig.). The State does not respond to this argument.

### a. Applicable Law

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011). In the "course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(a) (West 2011). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2015). Appropriation is unlawful if it is without the owner's effective consent. TEX. PENAL CODE ANN. § 31.03(b)(1).

Robbery may be effected by intentionally or knowingly: (1) threatening imminent bodily injury or death; or (2) placing another in fear of imminent bodily injury or death. *See, e.g., Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011); *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim. App.

1964). As a result, the plain language of the statute encompasses not just explicit threats, but whatever implicit threats may lead to the complainant being placed in fear. *See Howard*, 333 S.W.3d at 138. So long as the defendant's actions are of such nature as in reason and common experience is likely to induce a person to part with her property against her will, any actual or perceived threat of imminent bodily injury will satisfy this element of the offense. *See Howard*, 333 S.W.3d at 138; *Devine*, 786 S.W.2d at 270.

To threaten another with serious bodily injury includes verbal or other express offers of serious harm. *See Howard*, 333 S.W.3d at 139 (noting relevant part of Texas statute similar to Model Penal Code and quoting MODEL PENAL PENAL CODE § 222.1, commentaries, vol. 2, at 109). It is well established that threats may be conveyed in more ways than merely a verbal manner. *See McGowan v. State*, 664 S.W.3d 355, 357 (Tex. Crim. App. 1984). Threats may be communicated through action, conduct, or words. *See McGowan*, 664 S.W.3d at 357.

Alternatively, the statute also applies to the defendant placing another in fear of imminent bodily injury or death. *See Howard*, 333 S.W.3d at 138-39. This is a passive element when compared to the dissimilar, active element of threatening another. *See Williams v. State*, 827, S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). This language is meant to include menacing or other implied threats sought to be communicated to the complainant by the actor's conduct. *See Howard*, 333 S.W.3d at 139 (quoting MODEL PENAL PENAL CODE § 222.1, commentaries, vol. 2, at 109); *Williams*, 827 S.W.2d at 616 (if no actual threats conveyed by defendant, factfinder must find that complainant perceived fear or was placed in fear in circumstances). In other words, where the complainant testifies that she was in fear of serious bodily injury or death, a verbal threat by the defendant is not required. *See Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. (1985) (op. on reh'g); *Soto v. State*, 864 S.W.2d 687, 692 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *Petrick v. State*, 832 S.W.2d 767, 770 (Tex.

App.—Houston [1st Dist.] 1992, pet. ref'd). However, the complainant's fear must arise from the defendant's conduct, rather than the mere timidity of the complainant. *See Devine*, 786 S.W.2d at 270; *Cranford*, 377 S.W.2d at 959. Accordingly, this language applies to cases where the defendant brandishes a weapon or otherwise displays the ability and the intention to use force if his wishes are not honored. *See Howard*, 333 S.W.3d at 139 (quoting MODEL PENAL PENAL CODE § 222.1, commentaries, vol. 2, at 109). Under appropriate circumstances, a jury may find the requisite fear from a menacing glance and a hand gesture, even when no verbal threats are made. *See Wilmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.).

### b. Application of the Law to the Facts

The record shows that the indictment and the jury charge included, in the conjunctive, both statutory alternatives in which a robbery may be effected, stating Jackson did intentionally or knowing "threaten and place SHEILA ETONGA in fear of imminent bodily injury and death." On appeal, Jackson argues only that the evidence was insufficient to establish that he intentionally or knowingly placed Etonga in fear of imminent bodily injury or death, stating "Still, someone must be intentionally or knowingly placed in fear by the actor. . . [T]he subjective fear of [Etonga] is not enough. [He] did not commit an act that in common experience is expected to cause a complaining witness to fear death or *imminent* bodily injury." (Emphasis in orig.).

During the trial, Etonga testified that she was alone in her apartment complex parking lot at approximately 1:00 a.m. when Jackson approached her. Initially, she declined to allow Jackson to use her phone or to give him a ride. However, at some point during their interaction, Etonga saw that his "eyes just got a little scary like there was something wrong" and he was holding a knife toward her, so she begged him not to hurt her and complied with his demands for her wallet, keys, and cell phone. Although Etonga stated that Jackson said that he would not hurt

–8–

her, Etonga testified that she was afraid something would happen that would hurt her or that she would suffer some type of injury.

We conclude the jury was able to find that Jackson's actions were of such a nature as in reason and common experience were likely to induce Etonga to part with her property against her will. *See Howard*, 333 S.W.3d at 138; *Devine*, 786 S.W.2d at 270. Under the circumstances, a rational jury could have found that a reasonable person alone at night would be placed in fear of imminent bodily injury or death by Jackson's "scary eyes" and display of a knife accompanied by his demands for her property. *See Wilmeth*, 808 S.W.2d at 706. Viewing the evidence in the light most favorable to the verdict, we conclude there was sufficient evidence to establish that Jackson's conduct placed Etonga in fear of imminent bodily injury or death.

The first part of issue one is decided against Jackson.

### 2. Used or Exhibited a Deadly Weapon

In the second part of issue one, Jackson argues the evidence was insufficient to establish he used or exhibited a deadly weapon during the commission of a robbery because the pocket knife was not a deadly weapon. Specifically, Jackson maintains that there is no evidence establishing the size of the blade, the appearance of sharpness, brandishing motions, or the complainant's fear of serious injury. The State responds that the evidence is sufficient to prove Jackson used or exhibited a deadly weapon during the offense.

### a. Applicable Law

A person commits aggravated robbery if he uses or exhibits a deadly weapon during the commission of a robbery. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2015). Serious bodily injury is "bodily injury that creates a substantial risk of death

or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). A deadly weapon finding can only be made when the deadly weapon facilitates the associated felony. *See Plummer v State*, 410 S.W.3d 855, 859–60 (Tex. Crim. App. 2013).

A knife is not a deadly weapon as a matter of law. *See Robertson v. State*, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005); *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). Whether a particular knife is a deadly weapon by design, a deadly weapon by usage, or not a deadly weapon at all, depends upon the evidence. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). Factors to consider when determining whether a knife is a deadly weapon in its use or intended use include: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; (4) the physical proximity between the defendant and the complainant; (5) the use of any brandishing motions; (6) statements, including threats, made by the defendant; (7) the complainant's fear of serious bodily injury or death; and (8) evidence of the knife's capacity to produce serious bodily injury or death. *See Lettsome v. State*, No. 01-13-00532-CR, 2014 WL 7205100, at *3 (Tex. App.— Houston [1st Dist.] Dec. 18, 2014, pet. ref'd) (mem. op., not designated for publication) (citing, in part, *Blain*, 647 S.W.2d at 294). Expert or lay testimony may be used to establish that the weapon used was capable of causing death or serious bodily injury. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008). The complainant need not sustain an injury for the knife to be a deadly weapon. *See Tucker*, 274 S.W.3d at 692. In addition, when determining the deadliness of a weapon, the jury may consider all of the facts of the case, including the words spoken by the defendant. *See Blain*, 647 S.W.2d at 294.

**b. Application of the Law to the Facts**

First, we address the size, shape, and sharpness of the knife. The record shows that the pocket knife found in Jackson's possession when he was arrested was admitted into evidence. An officer testified that the pocket knife had a three and one-half inch blade. In addition, the pocket knife was shown to the jury.

Second, we address the manner of the knife's use or intended use. Etonga testified that it was late at night and no one else was around when Jackson came towards her. She stated that Jackson held the knife toward her when he demanded her money and keys.

Third, we address the nature or existence of inflicted wounds. The record shows that Etonga was not injured.

Fourth, we address the physical proximity between Etonga and Jackson. The record shows that Jackson approached Etonga. Also, they were close enough that Etonga "handed him" her wallet, keys, and cell phone, and Jackson "took them from [her] hands."

Fifth, we address whether the record shows Jackson used any brandishing motions. It does not. Instead, Etonga testified she looked down and saw the knife in his hand.

Sixth, we address whether Jackson made any statements, including threats. Although Etonga testified that Jackson stated he would not hurt her, he did demand her wallet, keys, and cell phone.

Seventh, we address Etonga's fear of serious bodily injury or death. The record shows that Etonga initially refused to allow Jackson to use her cell phone or to give him a ride in her car. However, after she saw his "scary eyes" and the knife, she gave him her wallet, keys, and cell phone. Also, Etonga stated that she was scared, begged him not to hurt her, and feared that something would happen that would hurt her or that she would suffer some type of injury.

–11–

Eighth and finally, we address whether the knife was capable of producing serious bodily injury. There was no lay or expert testimony offered about the knife's capacity to inflict such injury or death.

Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence from which a rational jury, considering all the facts, could have found that the pocket knife was a deadly weapon and that Jackson used or exhibited that deadly weapon during the commission of the robbery.

The second part of issue one is decided against Jackson.

### C. Evading Arrest or Detention

In issue five, Jackson argues the evidence is insufficient to support his conviction for evading arrest or detention. He claims that, "[a]lthough Officer Witt retrospectively asserted that he was 'attempting to arrest or detain [Jackson] for the offense of aggravated robbery,' [Officer] Wadas never specifically stated that she was attempting to arrest or detain [Jackson] while she and [Officer] Witt were chasing after [the] vehicle [he was driving] from the place where it initially stopped." Also, Jackson contends that the evidence is insufficient because there was no evidence of the law pertaining to arrest or detention, i.e., section 545.421 of the Texas Transportation Code, and that law was not included in the jury charge. *See* TEX. TRANSP. CODE ANN. § 545.421 (West 2011) (offense of fleeing or attempting to elude police officer). The State responds that the officers had reasonable suspicion to detain Jackson because he was driving a vehicle that matched the license plate and description of a stolen vehicle in a police radio broadcast.

### 1. Applicable Law

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest

–12–

or detain him.  *See* TEX. PENAL CODE ANN. § 38.04(a).  Essentially, a person commits a crime under section 38.04 if he knows a police officer is attempting to arrest or detain him, but nevertheless refuses to yield to a police show of authority.  *See Smith v. State*, 483 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2015, no pet.).  The offense is a third-degree felony if the actor uses a vehicle while in flight.[1]  TEX. PENAL CODE ANN. § 38.04(b)(2)(a), text subsec. (b)(1), (2) as amended by Acts 2011, 82nd Leg., ch. 839 (H.B. 3423), § 4 and Acts 2011, 82nd Leg., ch. 920 (S.B. 1416), § 3.  Accordingly, for a third degree felony, the State must prove that a person: (1) intentionally; (2) flees; (3) from a person; (4) he knows is a peace officer or federal special investigator; (5) attempting to lawfully arrest or detain him; and (6) the actor uses a vehicle while in flight.  *See Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (discussing statute before 2011 amendments).

A person cannot be convicted of evading arrest or detention if the State fails to prove that the attempted arrest or detention was lawful.  *Compare* TEX. PENAL CODE ANN. § 38.04(a) *with* TEX. PENAL CODE ANN. § 38.03(a), (b)(West 2011) (providing it is not a defense to a prosecution for resisting arrest, search, or transportation that the arrest or search was unlawful).  A detention,

---

[1]  During the 2011 legislative session, section 38.04 of the Texas Penal Code was amended multiple times, resulting in two different punishment schemes.  Both punishment schemes are codified in section 38.04.  *See* TEX. PENAL CODE ANN. § 38.04 (West Supp. 2015).  One portion of the section now classifies the offense as a third degree felony where the actor uses a motor vehicle or watercraft in fleeing law enforcement and has been previously convicted under section 38.04.  *See* TEX. PENAL CODE ANN. § 38.04(b), text of subsec. (b)(2) as amended by Acts 2011, 82nd Leg., ch. 391 (S.B. 496), § 1 and Acts 2011, 82nd Leg., ch. 839 (H.B. 3423), § 4.  Another part of the statute makes evading arrest or detention a third degree felony where the actor uses a vehicle, regardless of his having been previously convicted of the offense.  Text of subsec. (b)(2) as amended by Acts of 2011, 82nd Leg., ch. 839 (H.B. 3423), § 4 and Acts 2011, 82nd Leg., ch. 920 (S.B. 1416), § 3.  The Fort Worth Court of Appeals analyzed this variance and concluded the statutory amendments were capable of being harmonized pursuant to the Texas Code Construction Act.  *See Adetomiwa v. State*, 421 S.W.3d 922, 925–27 (Tex. App.—Fort Worth 2014, no pet.) (applying TEX. GOV'T CODE ANN. §§ 311.001, 311.002(2), 311.025 (West 2013)).  Also, in *Adetomiwa,* the Fort Worth Court of Appeals pointed out that even if the amendments were irreconcilable, the amendment making the offense a third degree felony in a situation where the defendant used a motor vehicle without having been previously convicted of the same offense, was the final amendment of the legislative session and would be the prevailing amendment under section 311.025(b) and (d) of the Texas Code Construction Act.  *See Adetomiwa*, 421 S.W.3d at 927 (discussing TEX. GOV'T CODE ANN. § 311.025(b), (d)).  Other courts of appeals have addressed this same issue and have reached the same conclusion.  *See Whitfield v. State*, No. 01-15-00336-CR, 2016 WL 3221298, at *2–3 (Tex. App.—Houston [1st Dist.] June 9, 2016, no pet.) (mem. op., not designated for publication); *Moorehead v. State*, 483 S.W.3d 246, 247–48 (Tex. App.—Texarkana 2016, no pet.); *Salazar v. State*, 474 S.W.3d 832, 839–40 (Tex. App.—Corpus Christi 2015, no pet.); *State v. Sneed*, No. 09-14-00232-CR, 2014 WL 4755502, at *3–4 (Tex. App.—Beaumont Sept. 24, 2014, pet., ref'd) (mem. op., not designated for publication); *Thompson v. State*, No. 12-13-00264-CR, 2014 WL 3662239, at *1–2 (Tex. App.—Tyler July 23, 2014, no pet.) (mem. op., not designated for publication); *Wise v. State*, No. 11-13-00005-CR, 2014 WL 2810097, at *4–5 (Tex. App.—Eastland Jun. 19, 2014, pet. ref'd) (mem. op., not designated for publication); *Scott v. State*, No. 10-13-00159-CR, 2014 WL 1271756, at *2-3 (Tex. App.—Waco Mar. 27, 2014, no pet.) (mem. op., not designated for publication); *Peterson v. State*, No. 07-13-00155-CR, 2014 WL 546048, at *1–2 (Tex. App.—Amarillo Feb. 10, 2014, pet. ref'd) (mem. op., not designated for publication).  We agree with our sister courts of appeals.

as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). These articulable facts must amount to more than a mere hunch or suspicion. *See Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). Reasonable suspicion authorizing such a stop and detention exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2016); *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Abney*, 394 S.W.3d at 548; *Smith*, 483 S.W.3d at 655. The reasonable suspicion standard requires only "some minimal level of objective justification" for the stop and disregards an officer's actual subjective intent. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Officers may lawfully stop a vehicle and conduct an investigative detention when the vehicle matches the description of a stolen vehicle in a radio dispatch report. *See Smith*, 483 S.W.3d at 655.

## 2. Application of the Law to the Facts

Jackson does not challenge the sufficiency of every element of the offense. Instead, he challenges only the fifth element, the lawfulness of the detention. The record shows that Officer McDaniel responded to the robbery and relayed information, including the license plate number, make, model, and color of Etonga's car over the radio. Approximately five minutes after Officers Witt and Wadas heard the radio broadcast, they saw a vehicle matching the description of Etonga's car. They "pulled up behind [the car], ran a license plate check, and on the registration page [they] could see that the registered owner was [Etonga]." The State presented evidence of specific, articulable facts that would lead the officers to believe that Jackson was

–14–

driving a stolen car. *See Smith*, 483 S.W.3d at 655. Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence from which a rational jury could have found the officers were attempting to lawfully detain Jackson.

Issue five is decided against Jackson.

### III. JURY CHARGE ERROR

In issue two, Jackson argues he suffered egregious harm when the trial court included alternative theories of guilt in the jury charge that were not supported by the evidence. He concedes that he did not object to the jury charge. However, Jackson claims he suffered egregious harm because the jury charge reduced the State's burden of proof when it included definitions for which there was no supporting evidence such as: (1) "in the course of committing theft," which included attempted theft and conduct occurring while in immediate flight; and (2) "deadly weapon," which included something capable of causing death or serious bodily injury. The State responds that the trial court properly instructed the jury.

### I.     *A. Applicable Law*

Appellate review of claims of jury-charge error requires an appellate court to determine: (1) whether the jury charge was erroneous; and (2) whether the record shows that error resulted in harm, applying the appropriate harm analysis, which is determined by whether the error was preserved for appeal. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010). If an appellate court concludes that the jury charge was not erroneous, it need not conduct a harm analysis. *See Cortez*, 469 S.W.3d at 598.

Under article 36.14 of the Texas Code of Criminal Procedure, the trial court is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or

–15–

using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). If a term is statutorily defined, the trial court must submit the statutory definition in the charge to the jury. *See Alexander v. State*, 906 S.W.2d 107, 111 (Tex. App.—Dallas 1995, no pet.).

### B. Application of the Law to the Facts

The definition section of the jury charge, defined "robbery" and "in the course of committing theft" as follows:

> Our law provides that a person commits the offense of robbery if he, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain and maintain control of the property of another, intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.
>
> . . . .
>
> The term "in the course of committing theft" means conduct that occurs in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of theft.
>
> Section 29.02(a)(2) of the Texas Penal Code States:
>
> **§ 29.02      Robbery**
>
> (a)      A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with the intent to maintain control of the property, he:
>
> . . . .
>
> (2)      intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX. PENAL CODE ANN. § 29.02(a)(2) (emphasis in orig.). Section 29.01(a) of the Texas Penal Code defines "[i]n the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(a).

In this case, the jury was properly instructed that "[t]he term 'in the course of committing theft' means conduct that occurs in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of theft." *See* TEX. PENAL CODE ANN. § 29.01(a). Further, there was evidence adduced at trial that Jackson was in the course of committing theft when he demanded Etonga's wallet, keys, and cell phone while holding a knife in his hand.

Also, the definition section of the jury charge, defined "aggravated robbery" and "deadly weapon" as follows:

> The offense becomes aggravated robbery if the person committing robbery uses or exhibits a deadly weapon.
>
> You are instructed that a deadly weapon means (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.
>
> Section 29.03(a)(2) of the Texas Penal Code defines aggravated robbery as follows:
>
> **§ 29.03      Aggravated Robbery**
>
> (a)      A person commits an offense if he commits robbery as defined in Section 29.02, and he:
>
> . . . .
>
> (2)      uses or exhibits a deadly weapon[.]

TEX. PENAL CODE ANN. § 29.03(a)(2). Also, section 1.07(a)(17) defines a deadly weapon as follows:

> (17)      "Deadly weapon" means:
>
> (A)      a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B)      anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(17). We have already concluded that there was sufficient evidence to support the jury's finding that Jackson used or exhibited a deadly weapon.

We conclude that the trial court did not err because, as required by law, the jury charge set forth the law applicable to the case and included the statutory definitions for the challenged terms. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Alexander*, 906 S.W.2d at 111. Accordingly, we need not conduct an analysis to determine whether there was egregious harm because we have concluded the jury charge was not erroneous. *See Cortez*, 469 S.W.3d at 598.

Issue two is decided against Jackson.

## IV. TRIAL COURT DID NOT ASSUME INAPPROPRIATE ROLE

In issue three, Jackson argues the trial court erred because it: (1) should not have discouraged him from pleading guilty; (2) given approval to the State's incorrect assertions of the law; or (3) instructed him that he was ineligible for deferred adjudication because the State refused to consent to his desire to waive a jury trial. Jackson does not explain the error of the trial court other than to assert that "This was not a proper role for the trial court to assume." The State responds that the trial court made an accurate statement regarding Jackson's eligibility for community supervision. Further, the State contends that its refusal to consent to Jackson's desire to waive a jury trial was not impacted by the trial court's statements.

### B. Applicable Law

Article 26.14 of the Texas Code of Criminal Procedure makes a jury punishment the default option for a defendant who pleads guilty in a felony case. *See* TEX. CODE CRIM. PROC. ANN. art. 26.14 (West 2009); *In re State ex rel. Tharp*, 393 S.W.3d 751, 754–55 (Tex. Crim. App. 2012) (orig. proceeding). To avoid the default option, the guilty-pleading defendant must waive his right to a jury under article 1.13, which requires the State's consent. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (West Supp. 2015); *In re Tharp*, 393 S.W.3d at 755. When a

defendant pleads guilty and the State refuses to consent to the defendant's waiver of a jury trial, the trial court must submit all relevant issues, including punishment, to the jury. *See In re Tharp*, 393 S.W.3d at 758–59. Article 37.07 also permits a defendant to waive a jury trial, but by its terms, it applies only to pleas of not guilty. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2015); *In re Tharp*, 393 S.W.3d at 755.

In Texas, a defendant may obtain straight community supervision from either a judge or a jury. *See* TEX. CODE CRIM. PROC. ANN. arts. 37.07, § 2(b); 42.12, §§ 3(a), 4(a), 4(e) (West Supp. 2015); *Yazdchi v. State*, 428 S.W.3d 831, 841 (Tex. Crim. App. 2014). However, a person convicted of aggravated robbery is not eligible for judge-ordered community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(1)(F) (West Supp. 2015). Also, a trial court may not order community supervision when it is shown that a deadly weapon was used or exhibited during the commission of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(a)(2). On the other hand, if a defendant seeks sentencing by the jury, he is eligible for community supervision if he files a pretrial motion with the court stating that he has never before been convicted of a felony. *See* TEX. CODE CRIM. PROC. ANN. art. art. 42.12, § 4(e); *Yazdchi*, 428 S.W.3d at 841.

### C. Application of the Law to the Facts

First, Jackson argues the trial court improperly discouraged him from pleading guilty. This assertion is not supported by the record. Rather, the record shows that during a pretrial hearing, after indicating that he was not aware his case had been set for a jury trial, Jackson informed the trial court that he had told his defense counsel that he did not want a jury trial. Also, the record shows that Jackson refused the two offers of a plea bargain from the State. The first offer was for ten years and the second offer was for twenty years. During the pretrial hearing, the State made clear that the offer for ten years was no longer available. However,

Jackson stated that he wanted probation or a punishment of less than ten years. Further, when Jackson complained that his counsel did not obtain the desired plea bargain, he stated that he was "not going to just keep talking to him." Then, the trial court explained the plea bargain process and some of the considerations Jackson and his counsel should take into account, and encouraged Jackson to communicate with his counsel. We conclude the record does not show the trial court discouraged Jackson from pleading guilty.

Second, Jackson argues the trial court erred when it gave approval to the State's incorrect assertions of the law. He claims the trial court inappropriately told him that if he went to trial, he was eligible for community supervision only if the jury assessed his punishment. Jackson argues that article 37.07, section 2(b) of the Texas Code of Criminal Procedure "appears to provide that a defendant may choose both to plead guilty and to have the judge assess his punishment even if the State does not permit him to waive [his] right to trial by jury under [] [a]rticle 1.13." The record shows that during the pretrial hearing, the State indicated that if Jackson pleaded guilty, it would not consent to Jackson's waiver of a jury trial. In addition, defense counsel advised the trial court that Jackson was not communicating with him, he was having difficulty helping Jackson to understand that if he wanted to seek community supervision he would need to have a jury trial, and he had advised that if Jackson decided to have a jury assess his punishment, he should also have them determine his guilt. Also, during the pretrial hearing, the trial court explained that if Jackson pleaded not guilty, he had the right to elect whether he wanted the trial court or jury to assess his punishment and if he elected to have the jury assess his punishment there was a possibility they would assess community supervision. Further, the trial court expressed concern over Jackson's lack of communication with his defense counsel. Afterward, although Jackson stated both that he was "not prepared to go to trial" and "[he] will take it to

–20–

trial," the trial court postponed the trial so that defense counsel could further discuss with Jackson his options.

Then, on the day of trial, Jackson filed a written election of punishment, stating that he "requests that the judge assess the punishment [] in the event that a guilty verdict is rendered by the jury." *See* TEX. CODE CRIM. PROC. ANN. art. 27.02. The record shows that Jackson confirmed he was freely and voluntarily giving up his right to seek community supervision and that he understood the punishment range if the trial court assessed his punishment. Afterward, Jackson was arraigned in both cases and through his counsel, pleaded "Not guilty." *See* TEX. CODE CRIM. PROC. ANN. arts. 26.02, 27.02(4).

Jackson's assertion that article 37.07, section 2(b) of the Texas Code of Criminal Procedure allows him to plead guilty and to have the judge assess his punishment without the State's consent is incorrect. As the trial court correctly stated during the pretrial hearing and Jackson indicated his understanding before trial, if the jury assessed his punishment, Jackson was eligible for community supervision, but if the trial court assessed his punishment, he was not. If Jackson had pleaded guilty, he would have needed the State's consent to avoid the default option of having a jury assess his punishment. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13; *In re Tharp*, 393 S.W.3d at 755. Contrary to his claim on appeal, article 37.07 applies only to pleas of not guilty. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07; *In re Tharp*, 393 S.W.3d at 755. Accordingly, we conclude the trial court did not err by approving or allowing the State to make incorrect assertions of the law.

Third, Jackson argues the trial court erred when it instructed him that "he was ineligible for deferred adjudication [community supervision] merely because the State was refusing to consent to his desire to waive [a] trial by jury." However, the record does not show that the trial court made such an instruction. Nevertheless, because the State indicated that, if Jackson

–21–

pleaded guilty, it would not consent to Jackson's waiver of a jury for the assessment of punishment, Jackson was not eligible for deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5. Accordingly, we conclude the trial court did not err.

We conclude that Jackson has not shown the trial court assumed an improper role because the trial court did not discourage him from pleading guilty, give approval to an incorrect assertion of the law, or improperly instruct him that he was ineligible for deferred adjudication.

Issue three is decided against Jackson.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In issue four, Jackson argues he received ineffective assistance of trial counsel. He claims that his counsel's performance fell below an objective standard of reasonableness because counsel: (1) made no effort to use the deferred adjudication procedure set forth in Texas Code of Criminal Procedure article 42.12 and advise him to plead guilty to robbery; (2) failed to request instructions on the lesser-included or non-aggravated offense of robbery; (3) assisted the State by identifying venire members subject to Texas Code of Criminal Procedure article 35.16(b) challenges during counsel's voir dire; and (4) failed to make appropriate objections to the jury charge. Jackson argues the record in this case is sufficient for this Court to determine his counsel was ineffective. The State responds that the record is silent regarding defense counsel's reasons for most of the challenged interactions and Jackson did not allege ineffective assistance of counsel in his motion for new trial. Also, the State argues that Jackson has not shown that counsel's allegedly deficient performance prejudiced his defense.

### A.  Standard of Review

Judicial scrutiny of counsel's representation is highly deferential and an appellate court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable

representation. *See Ex parte Saenz*, WR-80,945-01, 2016 WL 1359214, at *5 (Tex. Crim. App. April 6, 2016); *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013). In order for an appellate court to conclude that counsel was ineffective, counsel's alleged deficiency must be affirmatively demonstrated in the record. *See Villa*, 417 S.W.3d at 463; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The defendant must produce record evidence sufficient to overcome the presumption that, under the circumstances, the challenged action was sound trial strategy. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Villa*, 417 S.W.3d at 463. It is not enough to merely show, through the benefit of hindsight, that counsel's actions were questionable. *See Lopez*, 343 S.W.3d at 142–43. An appellate court will inquire into counsel's trial technique only when there appears to be no plausible basis in strategy or tactics for counsel's actions. *See Villa*, 417 S.W.3d at 463. In making the determination whether the specified errors resulted in the required prejudice, an appellate court should presume, absent a challenge to the judgment on the grounds of sufficiency, that the judge or jury acted according to the law. *See Strickland*, 466 U.S. at 694.

### B. Applicable Law

To prevail on an ineffective assistance of counsel claim, a defendant must show by a preponderance of the evidence that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that the result of the proceeding would have been different, but for counsel's deficient performance. *See Strickland*, 466 U.S. at 687–88, 694; *Villa*, 417 S.W.3d at 462–63; *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). The purpose of this two-part test is to assess whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have been a reliable result. *See Strickland*, 466 U.S. at 686; *Villa*, 417 S.W.3d at 463. A defendant's failure to satisfy either part of the test defeats the ineffective assistance claim. *See Perez v. State*, 310

S.W.3d 890, 893 (Tex. Crim. App. 2010); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To satisfy the first part of the test, the defendant must show counsel's performance fell below "the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms [.]" *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The defendant generally must use affirmative evidence in the trial record to meet this burden. *See Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex. Crim. App. 2014). It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim. *See Nava*, 415 S.W.3d at 308. Although it is possible for a single egregious error of omission or commission by the defendant's counsel to constitute ineffective assistance of counsel, a single error will not typically result in a finding of ineffective assistance of counsel. *See Villa*, 417 S.W.3d at 463. Nevertheless, the first part of the test need not be addressed if it is easier to dispose of an ineffectiveness claim based on the second part of the test because there is a lack of sufficient prejudice. *See Cox*, 389 S.W.3d at 819.

To satisfy the second part of the test, the defendant must show a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 694; *Villa*, 417 S.W.3d at 463; *Nava*, 415 S.W.3d at 308.

### C. *Application of the Law to the Facts*

Initially, we note that the record shows that Jackson did not specifically assert that his trial counsel was ineffective in his motion for new trial and his trial counsel has not been afforded the opportunity to respond to the challenged conduct. As a result, we have no evidence indicating defense counsel's reasoning or strategy.

First, Jackson argues his counsel's performance was deficient because he made no effort to use the deferred adjudication procedure set forth in Texas Code of Criminal Procedure article 42.12 and advise him to plead guilty to robbery. However, as we stated in our resolution of issue three, because the State indicated that, if Jackson pleaded guilty, it would not consent to Jackson's waiver of a jury for the assessment of punishment, Jackson was not eligible for deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5. Jackson also contends that his counsel should have advised him to plead guilty to the lesser-included offense of robbery. However, there is nothing in the record to show that his counsel failed to discuss this possibility with him or that the State would have agreed to such a plea. Instead, the record shows that after initially offering Jackson a plea bargain for ten years, which he rejected, the State offered a second plea bargain for twenty years, which he also rejected. Jackson has not shown his counsel's performance was deficient because he made no effort to use the deferred adjudication procedure and advise him to plead guilty to robbery.

Second, Jackson argues that his counsel's performance was deficient because he failed to request an instruction on the lesser-included, non-aggravated offense of robbery. To establish counsel's performance was deficient for failing to request a lesser-included offense charge, Jackson must show that he would have been legally entitled to an instruction on the lesser-included offense if one had been requested. *See State v. Choice*, 319 S.W.3d 22, 25 (Tex. App.—Dallas 2008, no pet.). However, even if Jackson was entitled to a lesser-included offense charge, he still bears the burden of overcoming the presumption that counsel's decision not to request the instruction could be considered sound trial strategy. Assuming, without deciding, Jackson would have been entitled to the lesser-included offense charge of robbery if it had been requested, we have no evidence indicating why trial counsel did not request a lesser-included instruction. Defense counsel's decision not to request a lesser-included offense instruction could

be part of a reasonable all-or-nothing trial strategy. *See Washington v. State*, 417 S.W.3d 713, 726–27 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). For example, during closing argument, defense counsel argued, in part:

> The knife. Ms. Etonga described the knife. Ms. Etonga was not asked to identify a knife. She never saw a knife during her testimony. In fact, she was not even asked to describe what the knife was, what it looked like, anything at all. She simply said the assailant had a knife. And, folks, when you look at that knife, it's the sort of knife that anyone might carry for work around the home as a utility knife. It's not an illegal knife. They would have told you that, the State. They would have. There is nothing special about it. And you will be able to look at it if you choose.
>
> . . . .
>
> Ladies and gentlemen, when you go back there and deliberate as you will, remember the State must have proven each and every element of this case beyond a reasonable doubt. And if they failed to do so as to any element, identification, it's your duty and your obligation to find my client, [] Jackson, not guilty.

It is possible that defense counsel wanted the jury to choose between aggravated robbery and acquittal because he thought there was a chance the jury would not find Jackson used or exhibited a deadly weapon during the robbery. Accordingly, Jackson has failed to show defense counsel's performance was deficient because he failed to request an instruction on the lesser-included, non-aggravated offense of robbery.

Third, Jackson claims that his trial counsel's performance was deficient because, during voir dire, defense counsel exposed jurors who were subject to challenges for cause by the State. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). Specifically, he argues:

> [I]t is likely that the State made use of the information uncovered by defense counsel to eliminate those persons because they stated they had a bias or prejudice against a phase of the law upon which the State was entitled to rely for conviction. These jurors had not been identified during the State's examination. Trial counsel's aid to the prosecution was not inadvertent, but rather was the equivalent of allowing the State [seventeen] additional peremptory strikes.

We construe this to be an argument that defense counsel's performance was deficient because, during voir dire, he identified jurors who were biased in favor of the defendant.

–26–

The defendant has a constitutional right to a trial "by an impartial jury." *See* U.S. Const. amend. VI; *Sanchez v. State*, 165 S.W.3d 707, 7111 (Tex. Crim. App. 2005). Accordingly, one of the purposes of voir dire is to elicit information which would establish a basis for a challenge for cause because the venireperson is legally disqualified from serving or is biased or prejudiced for or against one of the parties or some aspect of the relevant law. *See Sanchez*, 165 S.W.3d at 710–11. However, because the right to an impartial jury is to be exercised at the option of the defendant, it is also subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of the trial. *See State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (concluding not deficient performance for defense counsel to retain juror that is impliedly biased in favor of State).

In his brief on appeal, Jackson does not identify the specific voir dire questions he complains constitute deficient performance on the part of defense counsel or direct to where these questions appear in the reporter's record. The State responds that Jackson's complaint revolves around a juror's concern that Jackson had elected to have the trial court assess his punishment and the trial court's request that defense counsel question each venireperson as to his ability to reach a fair and impartial verdict on guilt or innocence if they will not be asked to consider punishment. The State claims that there is nothing in the record to show that defense counsel assisted the State by asking these questions. We conclude Jackson has not shown trial counsel's performance was deficient because, during voir dire, he exposed jurors who were subject to challenges for cause by the State.

Fourth, Jackson maintains that his trial counsel's performance was deficient because he failed to make appropriate objections to the jury charge. Specifically, he claims that he outlined the problems with the jury charge, i.e., the failure to include an instruction on the lesser-included offense of robbery, so he was prejudiced by defense counsel's failure to object to the jury charge.

We have already concluded that Jackson has failed to show his counsel's performance was deficient because he failed to request an instruction on the lesser-included, non-aggravated offense of robbery.

We conclude that Jackson has not shown he received ineffective assistance of trial counsel. Issue four is decided against Jackson.

## VI. MODIFICATION OF THE JUDGMENT

Although neither party raises the issue, the judgment convicting Jackson of evading arrest or detention while using a motor vehicle while in flight states "Findings on Deadly Weapon: N/A." However, in a special issue included in the trial court's charge, the jury found that Jackson used or exhibited a deadly weapon during the commission of the offense. An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we conclude the trial court's judgment convicting Jackson of evading arrest or detention while using a motor vehicle while in flight should be modified to state, "Findings on Deadly Weapon: Yes, not a firearm."

## VII. CONCLUSIONS

The evidence is sufficient to support Jackson's convictions. Also, the jury charge was not erroneous and Jackson has not shown that the trial court assumed an inappropriate role or his trial counsel was ineffective. Finally, the judgment convicting Jackson of evading arrest or detention is modified to reflect that the jury found Jackson used or exhibited a deadly weapon during the commission of the offense.

The trial court's judgment convicting Jackson of aggravated robbery while using or exhibiting a deadly weapon is affirmed.

The trial court's judgment convicting Jackson of evading arrest or detention while using a motor vehicle while in flight is affirmed as modified.

_/Douglas S. Lang/_
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
150414F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EMAJIN TREVON JACKSON, Appellant

No. 05-15-00414-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1458177-X.
Opinion delivered by Justice Lang. Justices Brown and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of July, 2016.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EMAJIN TREVON JACKSON, Appellant

No. 05-15-00415-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1458178-X.
Opinion delivered by Justice Lang. Justices Brown and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The portion of the trial court's judgment that states "Findings on Deadly Weapon: N/A" is modified to state "Findings on Deadly Weapon: Yes, not a firearm."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 22nd day of July, 2016.